Trenton R. Kashima (SBN 291405)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@bryson.com

*Attorney for Plaintiff*

*(Additional Counsel listed on Signature Page)*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASEY MACARTNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CREATE WELLNESS, INC., a Delaware corporation,<br><br>Defendant. | Case No. __________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This class action seeks to remedy the deceptive, unfair and unlawful business practices of Defendant Create Wellness, Inc. ("Defendant" or "Create") with respect to the manufacturing, marketing and sale of its Core - Create Creatine Monohydrate Gummies products (the "Products")[1] throughout the United States and California.

2. Defendant improperly, deceptively and misleadingly warranted, labeled and marketed that its Products contain 4.5 grams of creatine monohydrate per serving, or 1.5 grams of creatine monohydrate per gummy. However, unbeknownst to consumers, the Products do not deliver the promised dosage of creatine monohydrate.

3. Laboratory analysis conducted in July 2024, utilizing high-performance liquid chromatography and confirmed by measuring nitrogen levels with the Kjeldahl method, revealed that each serving of the gummies contains less than 15 ***micro***grams of creatine monohydrate. Additional testing in July 2025, utilizing the same testing methods, revealed only 3.62 grams of creatine monohydrate per serving. As confirmed by both test results, consumers receive significantly less than the promised 4.5 grams of creatine monohydrate per serving. Accordingly, Defendant's labeling and advertising is literally false and is likely to mislead a reasonable consumer.

4. Plaintiff and Class Members reasonably relied on Defendant's labeling and marketing regarding the amount of creatine monohydrate in the Products. Indeed, consumers lack the ability to test or determine the amount of creatine monohydrate in the Products prior to purchase.

5. Additionally, the amount of creatine monohydrate in the Products is material. As a creatine monohydrate supplement, consumers only purchase the Products for the creatine monohydrate contained therein. Consequently, Plaintiff and Class Members paid a substantial price premium for the Products attributable to Defendant's false and misleading representations regarding the amount of creatine monohydrate contained therein.

6. Plaintiff, on behalf of himself and a Class of all others similarly situated in California,

[1] Subject to further discovery, such Products include all Core - Create Creatine Monohydrate Gummy flavors, including but not limited to, sour green apple, sour cherry, blue raspberry, orange and watermelon.

brings this action to hold Defendant accountable for its unlawful practices, to obtain redress for the economic injuries he and the Class suffered and to enjoin Defendant from continuing its deceptive conduct.

## PARTIES

### I. Plaintiff

7. Plaintiff Casey Macartney is an individual and a citizen of the State of California, residing in Los Gatos, California.

8. In or around February 2025, which is within the applicable statute of limitations period (the "Class Period"), Plaintiff purchased Core - Create Creatine Monohydrate Gummies Orange flavor – 90 count directly from Defendant's website for approximately $60.00 plus $6.99 for shipping, for a total purchase price of $66.99. In purchasing the Product, Plaintiff saw, read and reasonably relied on Defendant's packaging, labeling and marketing, which represented the Product contained 4.5 grams of creatine monohydrate per serving, or 1.5 grams of creatine monohydrate per gummy.

9. Had Defendant disclosed that the Product contained much less creatine monohydrate than advertised and warranted, Plaintiff would not have purchased the Product or would have paid substantially less for it. Accordingly, Plaintiff suffered injury-in-fact and lost money as a direct result of Defendant's unlawful and deceptive conduct.

10. Plaintiff would like to continue purchasing Defendant's Products if they contained the advertised amount of creatine monohydrate. Plaintiff is, however, unable to rely on Defendant's representations in deciding whether to purchase Defendant's Products in the future.

### II. Defendant

11. Defendant Create Wellness, Inc. is a Delaware Corporation. Based on information and belief, Defendant has its principal place of business in New York, New York.

12. Defendant manufactures, markets, advertises, distributes and sells the Products throughout the United States, including within the State of California. Defendant created and/or authorized the false, misleading and deceptive advertising, packaging and labeling for its Products as alleged throughout this Complaint.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because: (1) this is a class action in which the number of members of the proposed class is not less than 100; (2) the aggregated claims of the class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; and (3) minimal diversity exists, as Plaintiff is a citizen of the State of California and Defendant is a citizen of the States of Delaware and New York.

14. This Court has personal jurisdiction over Defendant because Defendant operates, conducts and engages in substantial business in the State of California and within this District. Defendant purposefully availed itself of the laws and markets of California by marketing, advertising, distributing and selling its Products to consumers throughout the State, including in this District, and by deriving substantial revenue from such sales. Defendant's unlawful and deceptive conduct as alleged herein occurred within and was directed at this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, purchased and used the Product in this District and suffered economic injury in this District as a direct result of Defendant's wrongful conduct.

## FACTUAL ALLEGATIONS

16. Defendant manufactures, markets, advertises and sells a wide range of creatine dietary supplements. Defendant touts that it created the industry's first creatine monohydrate gummy. Accordingly, Defendant markets itself as a trusted supplier of creatine dietary supplements.

17. Defendant specifically markets the Core - Create Creatine Monohydrate Gummies Products as its main offering. The Products come in several flavors, including Sour Cherry, Blue Raspberry, Sour Green Apple, Orange and Watermelon. Defendant sells its Products on its website, https://trycreate.co/, as well as through retailers such as Amazon.com, Walmart, GNC, Target and other health related retailers. Defendant charges a premium for its Products, marketing bundles of its supplements for over $200.00.[2] This is much more than similar creatine monohydrate dietary

[2] https://trycreate.co/products/core-latest-product?variant=52321199882612&selling_plan=692

supplements.[3]




18. The Products are dietary supplements that have only one therapeutic dietary ingredient: creatine monohydrate. Accordingly, the only reason that consumers purchase the Products is for the creatine monohydrate contained therein. For example, consumers do not purchase the Products for their taste or satiating effect, like food products. Nor do the Products have any other ingredients that would provide the advertised benefits. The creatine monohydrate is the sole benefit

---

093550964 (last visited Nov. 14, 2025).

[3] *See e.g.*, Goli Nutrition $17.99, https://www.target.com/p/goli-nutrition-creatine-monohydrate-sugar-free-dietary-supplement-gummies-60ct/-/A-93130960?sid=100S&afid=google&TCID=OGS&CPNG=Health&adgroup=94-2; Bloom Nutrition $14.99 https://www.target.com/p/bloom-nutrition-creatine-monohydrate-gummies-berry-boost-12ct/-/A-94745339?sid=100S&afid=google&TCID=OGS&CPNG=Health&adgroup=94-8.

the Products advertise to consumers.

19. Additionally, like other dietary supplements, the amount of dietary ingredient contained (or the dosage of the Products) therein is directly correlated with the benefits provided. Studies suggest that individuals should supplement with at least 3-5 grams of creatine a day (or about 0.3 g/kg day), with more recent studies suggesting that 5 grams of creatine monohydrate ingestion post-exercise had greater benefits for body composition.[4] Some studies even suggest that individuals should start "loading" with significant higher dosages of creatine, when starting creatine supplementation, to increase the body's initial creatine stores (*e.g.*, 25 grams of creatine), before reducing to a normal "maintenance" dose (*e.g.*, 5 grams). Accordingly, the amount of creatine monohydrate in a supplement is material to consumers.

20. Defendant advertises, labels and warrants that its Products contain 4.5 grams of creatine monohydrate per serving, or 1.5 grams of creatine monohydrate per gummy. This is displayed on each Products' Supplement Fact panel:




21. These claims also appear on Defendant's website, particularly on the webpages where consumers purchase the Products, and on the website of the Products' retailers.

22. Accordingly, a reasonable consumer would believe the Products' label claims, that the Product contain 4.5 grams of creatine monohydrate per serving or 1.5 grams of creatine monohydrate per gummy. Additionally, a reasonable consumer would find the amount of creatine monohydrate in

[4] https://pmc.ncbi.nlm.nih.gov/articles/PMC5545206/ (last visited Nov. 14, 2025).

the Products to be material because it delivers the recommended dosages of creatine monohydrate for most consumers per serving. Had the Products been advertised to contain a lesser amount of creatine monohydrate, Plaintiff and the members of the Class would not have been willing to purchase them on the same terms.

25. A reasonable consumer must rely on the accuracy of Defendant's label statements and advertising regarding the amount of creatine monohydrate. There is no way a consumer can determine the amount of creatine monohydrate in a gummy by looking at the Product at the time of purchase. Additionally, testing for the amount of creatine monohydrate is expensive and time consuming, requiring specialized equipment and scientific expertise. No reasonable consumer would test the Products to determine its creatine monohydrate contents.

26. Unbeknownst to consumers, the Products do not deliver the promised dosage of creatine monohydrate per serving. Laboratory analysis utilizing high-performance liquid chromatography and confirmed by measuring nitrogen levels with the Kjeldahl method conducted in July 2024 revealed that each serving of the gummies contains less than 15 micrograms of creatine monohydrate. Additional testing in July 2025, similarly utilizing high-performance liquid chromatography Kjeldahl method nitrogen confirmation, revealed only 3.62 grams of creatine monohydrate per serving. In both test results, consumers are receiving less than the promised and warranted amount of creatine monohydrate per serving.

27. Accordingly, consumers are literally not getting the benefit of their bargain. Plaintiff and other Class Members are being shortchanged by receiving much less creatine monohydrate per serving than what is listed on the label. This renders Defendant's labeling and marketing literally false. Therefore, Defendant's false, misleading and deceptive representations regarding the creatine monohydrate in the Products were likely to deceive, and did deceive, reasonable consumers, including Plaintiff and the members of the Class.

28. Not only is such advertising misleading, it is also illegal both under federal and state law. Under the federal Food, Drug, and Cosmetic Act ("FDCA") and its governing regulations, the amount of a dietary ingredient listed in the Supplement Facts panel must reflect the actual amount

*present* in the product—not an average or estimated figure.[5] For dietary ingredients specifically added to products, such as creatine monohydrate, the FDA explicitly requires that the product "***must contain 100% of the volume or weight declared on the label.***"[6] Any shortfall renders the product "misbranded and in violation of the law.[7]

29. Under California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"), all federal regulations adopted pursuant to the FDCA are incorporated as state regulations.[8] Therefore, this dietary supplement misbranding is also an independent violation of California state law.

30. As a large, sophisticated manufacturer that holds itself out as an expert in the field, Defendant must have known about the deficiency of the creatine monohydrate in the Products. Defendant was in a unique and superior position of knowledge regarding the ingredients, raw materials and manufacturing processes used for its Products. Additionally, under Current Good Manufacturing Practice ("CGMP") regulations, Defendant must test to verify the "identity of any component that is a dietary ingredient" or collecting "certificate of analysis from the supplier of the component" to ensure that the creatine monohydrate is of the quality and quantity required.[9] Defendant knew, or must have known, that it was under reporting the creatine monohydrate in the Products. Despite this knowledge, Defendant continued to manufacture, market and sell the Products with the incorrect amount of creatine monohydrate on their labels to unsuspecting consumers in California and across the country.

31. Without injunctive relief, consumers will be unable to determine if Defendant's labels remain incorrect or if the Products actually contain the amount of creatine monohydrate advertised. Further, Plaintiff and other consumers continue to be injured by Defendant's fraudulent business practices.

---

[5] 21 C.F.R. § 101.36(b)(2); U.S. Food and Drug Administration ("FDA") Dietary Supplement Labeling Guide, IV: Nutrition Labeling, https://bit.ly/3YhDYxh (last accessed August 28, 2025). Dietary Supp. Labeling Guide, IV.B.

[6] 21 C.F.R. § 101.9(g)(3)-(4); *see also* FDA Dietary Supplement Labeling Guide, IV: Nutrition Labeling.

[7] *Id.*

[8] California Health & Safety Code § 110100(a).

[9] 21 C.F.R. § 111.75.

32. Additionally, Defendant caused consumers to suffer a monetary injury. Each of the Products do not contain the amount of creatine monohydrate advertised and warranted. Accordingly, Plaintiff and Class Members are entitled to the relief as alleged herein, including the amount they overpaid for Defendant's falsely advertised Product.

## NO ADEQUATE REMEDY AT LAW

33. **No Adequate Remedy at Law**. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

34. **Broader Statutes of Limitations.** The statutes of limitation for the causes of action pled herein vary. The limitations period is four years for claims brought under the California Unfair Competition Law ("UCL"), which is one year longer than the statutes of limitation under the California False Advertising Law ("FAL") and the California Consumer Legal Remedies Act ("CLRA"). In addition, the statutes of limitation vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Class Members who purchased the Products more than 3 years prior to the filing of the Complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Multi-State Consumer Protection Class Members who purchased the Products prior to the furthest reach-back under the statute of limitation for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

35. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with significantly more creatine monohydrate per serving than is actually in the Products, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for Products that accurately represent the amount of creatine monohydrate per serving. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of Products at issue). Thus, Plaintiff and Class Members may be entitled to restitution under the UCL,

while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class Members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

36. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with significantly more creatine monohydrate per serving than is actually in the Products. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosure is necessary to dispel the public misperception about the Products that resulted from years of Defendant's unfair, fraudulent and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labels concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the Court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of

past/future Product sales and quantities of past/future Product sales.

37. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

38. **California vs. Multi-State Class Claims**. Violations of the UCL, FAL and CLRA are claims asserted on behalf of Plaintiff and the California Class against Defendant, while unjust enrichment/restitution and violations of multi-state consumer protection statutes are asserted on behalf of Plaintiff and the Multi-State Consumer Protection Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative Class Members.

39. **Procedural Posture—Incomplete Discovery & Pre-Certification.** In addition, discovery—which has not yet been provided and/or completed—may reveal that the claims providing legal remedies are inadequate. At this time, forcing an election of remedies at the initial pleadings stage, in the absence of completed discovery regarding class certification and merits, is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

## **Fed. R. Civ. P. 9(b) ALLEGATIONS**

***(Affirmative and By Omission)***

40. Although Defendant is in the best position to know what content it placed on its marketing materials during the relevant timeframe, and the knowledge that it had regarding the amount of creatine monohydrate per serving in the Products and its failure to disclose that fact accurately, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

41. **WHO**: Defendant made the inaccurate amount of creatine monohydrate per serving affirmative misrepresentation regarding the Products despite possessing the knowledge that such

representation grossly over reported the amount of creatine monohydrate per serving in the Products during the Class Period. It made this misrepresentation on the Products' packaging, website and marketing materials, in written and electronic form.

42. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it grossly overreported and misrepresented the amount of creatine monohydrate per serving in the Products. Defendant's conduct deceived Plaintiff and the Class into believing that the Products contained 4.5 g of creatine monohydrate per serving. Defendant knew, or should have known, this information is material to reasonable consumers, including Plaintiff and the Class, in making their purchasing decisions; yet it grossly overreported and misrepresented the amount of creatine monohydrate per serving in the Products, with test results showing the Products contain less than 3.62 grams of creatine monohydrate per serving and at times, significantly less. No reasonable consumer would expect that the Products to contain less than the represented amount of creatine monohydrate per serving as listed on the front label of the Products.

43. **WHEN**: Defendant's marketing of the Products detailed herein were made during the Class Period, prior to and at the point of sale, leaving Plaintiff and the Class unaware of the grossly overreported and misrepresented amount of creatine monohydrate per serving in the Products prior to purchasing the Products.

44. **WHERE**: Defendant's marketing of the Products was made on the Products' packaging and marketing materials, on Defendant's website and through its social media, in written and electronic form as well as through third party retailers and social media influencers.

45. **HOW**: Defendant misrepresented the amount of creatine monohydrate per serving in the Products, in written and electronic form on the Products' packaging and company website, through its social media, in written and electronic form as well as through third party retailers and social media influencers.

46. **WHY**: Defendant marketed its Products for the express purpose of inducing Plaintiff and the Class to purchase the Products, the effect of which was that Defendant profited by selling the Products to many thousands of consumers.

47. **INJURY**: Plaintiff and the Class purchased, or paid more for, the Products when they

otherwise would not have absent Defendant's misleading, unfair, fraudulent and unlawful marketing. Consumers continue to suffer economic harm by purchasing the Products that grossly overreport and misrepresent the amount of creatine monohydrate per serving in the Products.

## TOLLING/FRAUDULENT CONCEALMENT

48. Defendant continuously manufactured, marketed and sold the Products to unsuspecting customers. At all times relevant, it continuously and grossly overreport and misrepresent the amount of creatine monohydrate per serving in the Products.

49. By continuously repeating this false representation, Defendant engaged in a continuing wrong; sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

50. As the designer and manufacturer of the Products, at all times relevant to this Complaint, Defendant had actual knowledge that the Products contained significantly less creatine monohydrate per serving than what it represented on the front label of the Products.

51. Defendant's knowledge of the false representation is evidenced by, amongst other things, its obligation under CGMP regulations, to test and verify the "identity of any component that is a dietary ingredient" or collecting "certificate of analysis from the supplier of the component" to ensure that the creatine monohydrate is of the quality and quantity required.[10] Defendant knew, or must have known, that it was under reporting the creatine monohydrate in the Products. Despite this knowledge, Defendant continued to manufacture, market and sell the underfilled Products to unsuspecting consumers in California and across the country.

52. Thus, at all relevant times, Defendant knew, or must have known, that it was under reporting the creatine monohydrate in the Products. Despite this knowledge, Defendant continued to manufacture, market and sell the underfilled Products to unsuspecting consumers in California and across the country and Plaintiff's and the Class's claims are not time barred.

53. Plaintiff and other Class Members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Defendant grossly misrepresented the

[10] 21 C.F.R. § 111.75.

amount of creatine monohydrate per serving in the Products to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

54. Throughout the time period relevant to this action, Defendant concealed from, and failed to disclose to, Plaintiff and the other Class Members vital information about the creatine monohydrate per serving in the Products as described herein.

55. Defendant kept Plaintiff and the other Class Members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the actual amount of creatine monohydrate per serving in the Products, even upon reasonable exercise of due diligence.

56. Defendant had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Products, including the correct amount of creatin monohydrate per serving.

57. Instead, Defendant continued to market the Products as suitable for their intended purpose to further profit from the sale of the Products and prevent Plaintiff and other Class Members from seeking redress.

58. Plaintiff and the other Class Members justifiably relied on Defendant to disclose the true nature of the Products they purchased because the actual amount of creatine monohydrate per serving in the Products was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

59. Defendant's affirmative acts of concealment, including its continued marketing of the Products as containing 4.5 grams of creatine monohydrate per serving and fit for their intended purpose while possessing knowledge of actual per serving amount of creatine monohydrate in the Products, further support estoppel and tolling of any applicable limitations period.

## **CLASS ACTION ALLEGATIONS**[11]

60. Plaintiff brings this action pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated. Plaintiff proposes to represent a class (the "California Class") defined as follows:

[11] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Multi-State Consumer Protection Class and California Class.

> All persons who purchased the Products in the State of California for personal, family or household use and not for resale, during the fullest period allowed by law.

61. Plaintiff brings this action pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated. Plaintiff proposes to represent a class (the "Multi-State Consumer Protection Class") defined as follows:

> All persons who purchased the Products in the State of California or any state with similar laws[12] for personal, family or household use and not for resale, during the fullest period allowed by law.

62. Excluded from the Class are: (1) Defendant, its subsidiaries, parents, affiliates, officers, directors and any entity in which Defendant has a controlling interest; (2) the legal representatives, successors, and assigns of Defendant; (3) all federal court judges and their staffs; and (4) counsel for the parties.

63. Plaintiff reserves the right to amend the Class definition or to propose subclasses if discovery and further investigation reveal that such amendment or proposal is warranted.

64. This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is ascertainable. The members of the Class are so numerous that joinder of all members is impracticable. The questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[12] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to, Alaska (AS § 45.50.471, *et seq.*), Arkansas (Ark. Code § 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code § 17200, *et seq.*), Connecticut (Conn. Gen. Stat. § 42-110, *et seq*), Delaware (Del. Code tit. 6, § 2511, *et seq.*), District of Columbia (D.C. Code § 28-3901, *et seq.*), Florida (Fla. Stat. § 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*), Illinois (815 ICLS § 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law § 445.901, *et seq.*), Minnesota (Minn. Stat. § 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. § 407.010, *et seq.*), New Jersey (N.J. Stat. § 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. § 394, *et seq.*), Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*), Washington (Wash. Rev. Code § 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. § 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class), *id.* at ECF No. 337 (Dec. 1, 2025) (denying motion to decertify the multi-state consumer protection class).

65. **Numerosity (Fed. R. Civ. P. 23(a)(1))**: The members of the Class are so numerous that joinder of all members would be impracticable. On information and belief, Defendant is a major national manufacturer and distributor of creatine supplements, and has sold thousands, if not tens of thousands, of units of the Products to consumers throughout the State of California and the States encompassing the Multi-State Consumer Protection Class. The precise number of Class Members is unknown to Plaintiff but may be readily ascertained from Defendant's sales records and business documents.

66. **Commonality (Fed. R. Civ. P. 23(a)(2))**: There are questions of law and fact common to the claims of Plaintiff and the Class, and these common questions predominate over any questions affecting only individual members of the Class. These common questions include, but are not limited to, the following:

a. Whether the Products contained less creatine monohydrate than warranted and advertised;

b. Whether Defendant's representations were false, misleading and likely to deceive a reasonable consumer;

c. Whether Defendant's conduct constitutes an unfair, unlawful, or fraudulent business act or practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.;

d. Whether Defendant engaged in untrue or misleading advertising in violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

e. Whether Defendant violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*., by representing that the Products have characteristics or qualities which they do not have and by representing that they are of a particular standard, quality or grade, when they are of another;

f. Whether Defendant's marketing and advertising of the Products violated the consumer fraud laws of the States encompassing the Multi-State Consumer Protection Class;

g. Whether Plaintiff and the Class Members suffered injury in fact and lost money or property as a result of Defendant's unlawful conduct;

h. Whether Plaintiff and the Class Members are entitled to restitution, disgorgement and/or damages, and the proper measure thereof; and

i. Whether Plaintiff and the Class Members are entitled to declaratory and injunctive relief.

67. **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff, like all Class Members, purchased Defendant's Products in California for personal use and was exposed to Defendant's uniform marketing and labeling, which falsely reported the amount of creatine monohydrate contained therein. Plaintiff, like all Class Members, was injured by the same wrongful course of conduct by Defendant and suffered the same economic injury—namely, purchasing worthless or diminished-value products. Plaintiff's claims and the claims of the Class Members all arise from the same factual and legal theories.

68. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Class Members he seeks to represent. Plaintiff is committed to the vigorous prosecution of this action and retained counsel who are competent and experienced in prosecuting complex consumer class actions. Neither Plaintiff nor his counsel have any conflicts of interest that would interfere with their ability to represent the Class.

69. **Predominance (Fed. R. Civ. P. 23(b)(3))**: The common questions of law and fact enumerated above predominate over any questions affecting only individual members of the Class. The central issue in this litigation is whether Defendant engaged in a common course of conduct—deceptively marketing and selling misrepresented products to consumers. The liability determination will be common to all Class Members and will not require individualized inquiries into each member's purchase. The damages to the Class can be calculated on a class-wide basis, such as through the price premium paid for the Products.

70. **Superiority (Fed. R. Civ. P. 23(b)(3))**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

a. The individual economic losses suffered by each Class Member are likely too small to make it practicable for them to pursue individual litigation, rendering a class action

the only viable means for them to seek redress.

b. A class action will conserve judicial resources and promote efficiency by adjudicating the common claims of all Class Members in a single action, avoiding the burden of duplicative and potentially inconsistent rulings that would result from numerous individual lawsuits.

c. The management of this action as a class action will not present any significant difficulties. The Class is readily definable, and there is no reason to believe that individual members have an interest in controlling the prosecution of separate actions.

71. **Injunctive Relief (Fed. R. Civ. P. 23(b)(2))**: Class certification is also appropriate under Rule 23(b)(2) because Defendant acted on grounds that apply generally to the Class, making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Plaintiff and the Class seek an order enjoining Defendant from continuing its unlawful conduct as alleged herein and requiring Defendant to take all necessary corrective actions to remedy its past deception. Such injunctive relief is necessary to protect the public from further harm.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
***(On behalf of Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)***

72. Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, re-alleges and incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

73. Plaintiff and Multi-State Consumer Protection Class Members were injured as a result of Defendants' violations of the state consumer protection statutes listed in paragraph 61, footnote 12 above, which also provide a basis for redress to Plaintiff and Multi-State Consumer Protection Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

74. Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

75. Defendant's marketing of the Products violates this prohibition by deceiving

consumers into believing that the Products contain significantly more creatine monohydrate per serving than the Products actually contain.

76. Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of applicable law.

77. Defendant engaged in misleading and deceptive advertising representing that the Products contained 4.5 grams of creatine monohydrate per serving, when in reality, the Products significantly less. Defendant chose to package and market the Products in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all consumers who purchased the Products would be impacted by its misrepresentation as to creatine monohydrate content and would reasonably believe Defendant's false and misleading representation.

78. Defendant intended that Plaintiff and other Multi-State Consumer Protection Class Members would reasonably rely upon its misrepresentation concerning the true nature of the Products.

79. Defendant's concealment and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and other Multi-State Consumer Protection Class Members to be deceived about the true nature of the Products.

80. As a direct and proximate result of Defendant's violations of California law (as well as the laws identified in footnote 12), as set forth herein, Defendant caused Plaintiff and other Multi-State Consumer Protection Class Members to suffer ascertainable loss of money caused by Defendant's misstatements.

81. Had they been aware of the true nature of the Products, Plaintiff and other Multi-State Consumer Protection Class Members either would have paid less for the Products or would not have purchased them at all.

82. Pursuant to the aforementioned States' unfair and deceptive practices laws, Plaintiff and the Multi-State Consumer Protection Class Members are entitled to recover compensatory damages, restitution, punitive and special damages, including, but not limited to, treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT II**
**UNJUST ENRICHMENT/RESTITUTION**
**(*On Behalf of Plaintiff, individually, and on behalf of the California Class*)**

83. Plaintiff re-alleges and incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

84. Plaintiff brings this claim individually and on behalf of the California Class who purchased the Products within the applicable statute of limitations.

85. By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

86. Defendant had knowledge of such benefit, and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

87. Defendant has exclusive knowledge of the Products' per serving creatine monohydrate content. Defendant, as responsible for the manufacture and labeling of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the Products' per serving creatine monohydrate content. Defendant's control of the manufacturing, design, distribution and testing of the Products gives Defendant exclusive knowledge of the Products' per serving creatine monohydrate content.

88. Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading and deceptive omission.

89. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Additionally, Plaintiff and members of the Class suffered, and continue to suffer, economic losses and other damages, including but not limited to, the amounts paid for the Products and any interest that would accrue on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award in the form of damages, restitution and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for these losses. Plaintiff also seeks injunctive relief to enjoin Defendant's misconduct and prevent ongoing and future harm to consumers.

**COUNT III**
**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Violation of Cal. Civ. Code §§ 1750, *et seq.***
***(On behalf of Plaintiff, individually, and on behalf of the California Class)***

90. Plaintiff, individually, and on behalf of the California Class, re-alleges and incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

91. This Count is brought on behalf of Plaintiff and the Class for violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA").

92. The Products at issue are "goods" within the meaning of Cal. Civ. Code § 1761(a).

93. Plaintiff and the members of the California Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they purchased the Products for personal, family, or household use.

94. Plaintiff and the members of the California Class engaged in "transactions" within the meaning of Cal. Civ. Code § 1761(e) when they purchased the Products.

95. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

96. In the course of its business, Defendant violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the quality and characteristics of the Products. Defendant represented its Products contained 4.5 grams of creatine monohydrate per serving, when they did not.

97. By engaging in the false, deceptive and misleading labeling and marketing described herein, Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a): (i) representing that the Products have characteristics, uses and benefits that they do not have, Cal. Civ. Code § 1770(a)(5); (ii) representing that the Products are of a particular standard, quality or grade when they are of another, Cal. Civ. Code § 1770(a)(7); (iii) advertising the Products with intent not to sell them as advertised, Cal. Civ. Code § 1770(a)(9); and (iv) representing that the Products have been supplied in accordance with a previous representation when they have not. Cal. Civ. Code § 1770(a)(16).

98. Defendant's violations of the CLRA were willful and knowing. As a sophisticated

manufacturer, Defendant knew, or by the exercise of reasonable care, should have known that its Products did not contain the 4.5 grams of creatine monohydrate per serving advertised. Defendant possessed unique and superior knowledge of its raw materials and manufacturing processes. Despite this knowledge, Defendant misrepresented the contents of its Products.

99. Defendant's violations present a continuing risk to Plaintiff, the Class and the general public. Defendant's unlawful acts and practices impact the public interest because tens of thousands of consumers were injured in the same way by Defendant's common course of deceptive conduct.

100. Defendant's acts and practices described herein were likely to mislead a reasonable consumer acting reasonably under the circumstances to believe that the Products contained 4.5 grams of creatine monohydrate per serving.

101. Defendant's misrepresentations regarding the creatine monohydrate contents of the Products were material to Plaintiff's and the Class Members' decisions to purchase the Products. A reasonable consumer would attach importance to whether a creatine supplement contained the advertised amount of creatine.

102. Had Plaintiff and the members of the Class known the truth about the Products, they would not have purchased them or would have paid substantially less for them.

103. Because of Defendant's unfair and deceptive conduct, Defendant was able to sell the Products and charge more for them than they were worth, as the contaminated Products are entirely worthless.

104. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and the members of the Class suffered ascertainable loss and actual damages, in that they paid for Products that contained less creatine monohydrate then advertised. The damage sustained is the purchase price of the Products, or at a minimum the price premium paid for the Products.

105. Pursuant to Cal. Civ. Code § 1780(a)(2), Plaintiff and the Class seek an order enjoining Defendant from continuing to engage in the unlawful practices described herein. Plaintiff and the Class also seek injunctive relief requiring Defendant to engage in a corrective advertising campaign and to implement a new, adequate recall program that provides a full refund to all affected consumers.

106. Pursuant to Cal. Civ. Code § 1782(a), on or about September 8, 2025, Plaintiff sent a

letter via certified mail to Defendant, providing notice of its violations of the CLRA and demanding that Defendant correct such violations for all affected consumers. Defendant failed to correct such violations. As of the date of the filing of this Complaint, Defendant has not responded to the letter.

107. A declaration establishing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) was filed with the Complaint on [date]. *See* ECF No. 1-001.

108. Defendant's unfair, fraudulent and unlawful conduct described herein constitutes malicious, oppressive and/or fraudulent behavior, warranting an award of punitive damages as permitted by law. Defendant's misconduct was malicious in that Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that were not, in fact, what they believed they were purchasing. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers, despite being fully aware of the probable dangerous consequences of its conduct. Rather than accurately representing the amount of creatine monohydrate per serving in the Products and/or ensuring that the Products contained the advertised amount of creatine monohydrate per serving, Defendant deliberately concealed this information and continued marketing the Products as containing 4.5 grams of creatine monohydrate per serving. Defendant's misconduct was oppressive because its conduct was vile, base and contemptible, the kind of corporate behavior that reasonable people would look down upon and despise. By knowingly placing consumers at risk of ingesting a creatine supplement with a different amount of creatine monohydrate than what was listed on the front label of the Products, Defendant subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct was fraudulent because Defendant intentionally misrepresented material facts with the intent to deceive Plaintiff and consumers. Defendant's wrongful conduct, demonstrating malice, oppression and/or fraud, was committed, authorized, adopted, approved and/or ratified by Defendant's officers, directors and/or managing agents. Accordingly, Plaintiff seeks an award of punitive damages against Defendant to deter such egregious misconduct and to hold Defendant accountable for its intentional and reckless actions.

**COUNT IV**
**CALIFORNIA UNFAIR COMPETITION LAW,**
**Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(*On behalf of Plaintiff, individually, and on behalf of and the California Class*)**

109. Plaintiff, individually, and on behalf of the California Class, re-alleges and

incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

110. The Unfair Competition Law, Cal. Business & Professions Code §§ 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair" or "fraudulent" business act or practice and any false or misleading advertising.

111. **Unlawful Prong**. In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations of material facts, as set forth more fully herein, and violating California's CLRA, Cal. Civ. Code §§ 1750, *et seq.* (as alleged in Count III), and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* (as will be alleged in Count V), as well as the FDCA and Sherman Law.

112. Plaintiff, individually and on behalf of the other members of the Class, reserves the right to allege other violations of law which constitute other unlawful business acts or practices. As a result of Defendant's unlawful business acts and practices, Defendant unlawfully obtained money from Plaintiff and the Class Members.

113. **Unfair Prong**. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

114. Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in deceptive and false advertising, and misrepresented material facts regarding the contents of its Products. Defendant's conduct offends the established public policy enshrined in the FDCA, Sherman Law, CLRA and FAL. Additionally, there is no benefit to misrepresenting the contents of the Products. This conduct is immoral, unethical, oppressive and unscrupulous, and is substantially injurious to consumers.

115. **Fraudulent Prong**. The UCL also prohibits any "fraudulent business act or practice." A business act or practice is fraudulent under the UCL if it is likely to deceive members of the public.

116. Defendant's actions, claims, nondisclosures and misleading statements, as alleged herein, constitute "fraudulent" business practices in violation of the UCL because they are false, misleading, and/or likely to deceive reasonable consumers into believing that the Products contain a

particular amount of creatine monohydrate, when they do not.

117. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and the Class Members.

118. There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein, such as adequate quality control and transparent labeling.

119. Defendant's violations present a continuing injury to Plaintiff, the Class and the general public. Defendant's unlawful, unfair and fraudulent acts and practices impact the public interest because Plaintiff and the Class Members were injured in the same way by Defendant's common course of deceptive conduct.

120. Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

121. Defendant's misrepresentations regarding creatine monohydrate contents of the Products were material to Plaintiff's and the Class Members' purchasing decisions. A reasonable consumer would attach importance to whether a creatine supplement contained the advertised amount of creatine.

122. All of the conduct alleged herein occurred in the course of Defendant's business and was part of a pattern or generalized course of illegal conduct that continues to this day.

123. As a result of their deception, Defendant reaped unjust revenue and profit in violation of the UCL.

124. Had Plaintiff and the members of the Class known of Defendant's misrepresentations and deceptive acts and practices, they would not have purchased the Products or would have paid substantially less for them.

125. As a direct and proximate result of Defendant's conduct in violation of the UCL, Plaintiff and the members of the Class suffered injury-in-fact and lost money or property, in that they paid a price premium for the Products that they would not otherwise have paid.

126. Plaintiff and the Class Members do not have an adequate remedy at law because damages alone will not stop Defendant's deceptive practices. Only injunctive relief can prevent future

harm to the public by compelling Defendant to cease its unlawful conduct and engage in corrective action.

127. Plaintiff and the Class Members seek restitution if monetary damages are not available. Indeed, restitution can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**COUNT V**
**CALIFORNIA FALSE ADVERTISING LAW**
**Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(*On behalf of Plaintiff, individually, and on behalf of the California Class*)**

128. Plaintiff, individually, and on behalf of the California Class, re-alleges and incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

129. Defendant's conduct described herein constitutes deceptive and false advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

130. The FAL makes it "unlawful for any person . . . to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

131. Defendant misrepresented, omitted, concealed and failed to disclose material facts regarding the creatine monohydrate in the Products, as detailed throughout this Complaint.

132. Defendant made or caused to be made and disseminated throughout California advertising, marketing materials, packaging and labeling containing statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the Class Members.

133. Through its deceptive labeling and marketing, Defendant made representations to the

public, including Plaintiff and the Class Members, about the quality of the Products.

134. Because Defendant disseminated misleading information regarding the Products, and Defendant knew or should have known through the exercise of reasonable care that its representations were and continue to be misleading, Defendant violated the FAL.

135. Defendant's misrepresentations, concealments and omissions of material facts had the capacity to and did mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class Members, about the true quality and value of the Products.

136. Defendant's acts and practices described herein were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

137. Defendant's misrepresentations regarding creatine monohydrate contents of the Products were material to Plaintiff's and the Class Members' purchasing decisions. A reasonable consumer would attach importance to whether a creatine supplement contained the advertised amount of creatine.

138. Defendant's violations present a continuing risk to Plaintiff, Class Members and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest and will continue to do so unless enjoined.

139. As a direct and proximate result of Plaintiff's and Class Members' reliance on Defendant's false and misleading advertising, they suffered injury-in-fact and lost money or property by purchasing Products that were worth less than advertised and warranted. Had Plaintiff and Class Members known the truth, they would not have purchased the Products or would have paid substantially less for them.

140. Plaintiff and Class Members do not have an adequate remedy at law because damages alone will not stop Defendant from continuing its misconduct. Plaintiff and the Class seek injunctive relief, including an order requiring Defendant to cease its deceptive practices, engage in a corrective advertising campaign to inform consumers of the truth about the creatine monohydrate content per serving and implement an adequate recall program that provides full refunds to all affected consumers.

141. Pursuant to the FAL, Plaintiff, on behalf of himself and the Class, seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**<u>COUNT VI</u>**
**BREACH OF EXPRESS WARRANTY**
**Violation of Cal. Com. Code. § 2313**
**(*On behalf of Plaintiff, individually, and on behalf of the California Class*)**

142. Plaintiff, individually, and on behalf of the California Class, re-alleges and incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

143. Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described herein, which were "part of the basis of the bargain."

144. California generally does not require privity to allege a breach of warranty claim regarding food stuffs. However, to the extent that privity is required, Plaintiff and the Class Members have privity of contract with Defendant through their purchases of the Products from Defendant's website or authorized retailers, and through the express warranties that Defendant issued to its customers. Defendant's warranties accompanied the Products and were intended to benefit end-users of the Products. To the extent that Plaintiff and/or the Class Members purchased the Products from third-party retailers, privity is not required because Plaintiff and the Class Members are intended third-party beneficiaries of the contracts between Defendant and third-party retailers, and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailers. In other words, the contracts are intended to benefit the ultimate consumer or user of the Products.

145. Defendant breached the express warranties by selling Products that represented that the Products contained 4.5 grams of creatine monohydrate per serving, when testing confirms that they do not contain this amount.

146. Plaintiff and Class Members would not have purchased the Products had they known that the Products were falsely labeled and did not contain the creatine monohydrate warranted. Plaintiff and Class Members relied on Defendant's misrepresentations and misstatements.

147. That breach actually and proximately caused injury in the form of a portion of the purchase price that Plaintiff and Class Members paid for the Products.

148. Plaintiff provided Defendant with notice of the alleged breach within a reasonable time after he discovered the breach or should have discovered it.

149. As a result of Defendant's breach of warranty, Plaintiff and the Class Members were damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Violation of Cal. Com. Code § 2314**
**(*On behalf of Plaintiff, individually and on behalf of the California Class*)**

150. Plaintiff, individually, and on behalf of the California Class, re-alleges and incorporates by reference all paragraphs 1 through 71, as though fully set forth herein.

151. Defendant is a merchant of the Products as it is a business that regularly deals with creatine dietary supplements and holds itself out as having knowledge peculiar to creatine dietary supplements.

152. Plaintiff and Class Members are consumers who purchased the Products primarily for personal, family or household purposes. California Class Members did not use the Products for business purposes.

153. California generally does not require privity to allege a breach of warranty claim regarding food stuffs. However, to the extent that privity is required, Plaintiff and the Class Members have privity of contract with Defendant through their purchases of the Products from Defendant's website or authorized retailers, and through the implied warranties that Defendant issued to its customers. Defendant's warranties accompanied the Products and were intended to benefit end-users of the Products. To the extent that Plaintiff and/or the Class Members purchased the Products from third-party retailers, privity is not required because Plaintiff and the Class Members are intended third-party beneficiaries of the contracts between Defendant and third-party retailers, and because the implied warranty is intended to benefit purchasers or owners subsequent to the third-party retailers. In other words, the contracts are intended to benefit the ultimate consumer or user of the Products.

154. Pursuant to Cal. Com. Code § 2314, the Products were accompanied by an implied

warranty of merchantability.

155. Defendant impliedly warranted that the Products would pass without objection in the trade for the ordinary purpose for which they are intended. This includes the Products containing the amount of dietary ingredient advertised and listed on the Products' label as required by the FDCA and Sherman law, as well as complying with CGMPs.

156. Defendant further impliedly warranted that the Products conform to the promise or affirmations of fact made on the container or label, such as the listed amount of creatine monohydrate contained therein.

157. As evidenced by the allegations herein, the Products are non-merchantable because they do not have the quality the buyer reasonably expects. They do not pass without objection in the trade; namely, they do not contain 4.5 grams of creatine monohydrate per serving.

158. As a further result of Defendant's actions, Plaintiff and Class Members sustained damages equal to the difference between the value of the Products as accepted and the value the Products would have had if they had been as warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully prays for judgment against Defendant and the following relief:

A. An order certifying this action as a class action on behalf of the Classes defined herein, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;

B. A judgment in favor of Plaintiff and the Class on all counts;

C. A declaration that Defendant's actions, as described herein, violate California's Consumers Legal Remedies Act, Unfair Competition Law and False Advertising Law;

D. A declaration that Defendant's actions, as described herein, violate the multi-state consumer protection laws alleged herein;

E. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, but not limited to, an order:

i. Prohibiting and enjoining Defendant from continuing the unlawful, unfair and fraudulent business practices and the false and misleading advertising

described herein; and

ii. Requiring Defendant to engage in a corrective advertising campaign to inform consumers about the product contamination and to implement a new, adequate recall program that provides a full refund to all affected consumers;

F. An award to Plaintiff and the Class of full restitution of all funds that Defendant obtained as a result of its unlawful, unfair and fraudulent business practices described herein;

G. An award to Plaintiff and the Class of all actual damages, compensatory damages, statutory damages and punitive damages, in an amount to be determined at trial;

H. An award of reasonable attorneys' fees and all costs and expenses of this suit;

I. An award of pre-judgment and post-judgment interest on any amounts awarded; and

J. Such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all claims and issues so triable.

Dated: December 16, 2025

**BRYSON HARRIS SUCIU**
**& DEMAY, PLLC**

*/s/ Trenton R. Kashima*
Trenton R. Kashima (CA SBN No. 291405)
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@bryson.com

Nick Suciu*
**BRYSON HARRIS SUCIU**
**& DEMAY, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-2180
nsuciu@bryson.com

Melissa S. Weiner
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*Attorneys for Plaintiff and the Proposed Class*

**Pro hac vice forthcoming*

**AFFIDAVIT OF CASEY MACARTNEY**

I, Casey Macartney, declare as follows:

1. I am the Plaintiff in the referenced case and specifically the Plaintiff in the Cause of Action for Violations of the Consumer Legal Remedies Act. I am a competent adult, over eighteen years of age, and a resident of the State of California. I am making this declaration in support of my Class Action Complaint against Create Wellness, Inc.

2. The Class Action Complaint has been filed in the proper place for trial of this action because Defendant is doing business in this county, and I am informed and believe one or more of the transactions that form the basis of this action occurred in this county.

3. Accordingly, pursuant to California Code of Civil Procedure, section 1780, the Northern District of California is the proper venue for Plaintiff's California Consumers Legal Remedies Act claims.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on 12/15/2025, 2025 in Riverside, California.

Casey Thomas Macartney (Dec 15, 2025 10:52:53 PST)

Casey Macartney